UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| JERRY W. LEE, TRUSTEE, and INDIANA STATE DISTRICT COUNCIL OF LABORERS AND HOD CARRIERS WELFARE PENSION AND TRAINING FUND,<br><br>  Plaintiffs,<br><br>  v.<br><br>CDS CONCRETE SPECIALISTS, INC.,<br><br>  Defendant. | CASE NO. 1: 04-cv-0909-DFH-VSS |

ENTRY ON MOTION TO SET ASIDE DEFAULT JUDGMENT

Defendant C.D.S. Concrete Specialists, Inc. has moved to set aside the default judgment entered against it on April 28, 2006 in this action seeking to collect on allegedly unpaid employer contributions to multi-employer employee benefit plans. The central issue on the merits is whether C.D.S. Concrete Specialists, Inc. ("CDS") should be deemed an alter ego of Concrete Specialist Core Drilling & Services ("Concrete Specialist"), which was a sole proprietorship of Christopher Robinett. Concrete Specialist had signed a collective bargaining agreement for its employees, and it made contributions to the plaintiff employee benefit plans on behalf of its employees. On April 15, 2002, CDS was incorporated with Robinett as the sole shareholder. CDS continued a business

nearly identical to that of Concrete Specialist, and CDS continued to submit contribution reporting forms to the plaintiff plans for more than a year.

The case has a longer history than most ERISA collection cases. Plaintiffs Lee and the employee benefit plans filed the action on May 25, 2004. CDS filed a timely answer through attorney Michael Einterz. Magistrate Judge Shields conducted an initial pretrial conference on July 23, 2004. The docket was quiet for a time, and Judge Shields held status/settlement conferences in the summer of 2005, without resolution. On August 31, 2005, plaintiff moved for summary judgment as to liability. CDS filed a timely response. On January 3, 2006, the court denied summary judgment:

> Plaintiffs have submitted substantial evidence supporting their position. The court is not persuaded, however, that the issues of defendant's liability can be decided as a matter of law, without weighing competing evidence and evaluating the credibility of the assertions about the reasons for forming the new corporation and the manager's intentions with respect to the employees of that new corporation.

The court scheduled a trial for May 2006. On February 14, 2006, attorney Einterz moved to withdraw as attorney for CDS. His motion advised that CDS owed him fees and was failing to pay him. On March 2, 2006, the court granted the motion and ordered CDS to show cause no later than March 22, 2006 why default should not be entered against the corporation because it was not represented by counsel. The court also warned that the trial would not be delayed because CDS had lost its counsel. A report that a defendant has not paid its lawyer in a cases involving alleged delinquent contributions to multi-employer employee benefit plans

obviously raises some concerns about whether the defendant would be able to pay an adverse judgment, and the court believed there was little time to waste in finding out whether to proceed to a default judgment.

It is well established that a corporation cannot proceed in a lawsuit without being represented by an attorney.  See Ind. Code § 34-9-1-1(c); *Scandia Down Corp. v. Euroquilt, Inc.*, 772 F.2d 1423, 1427 (7th Cir. 1985); *Christian Business Phone Book, Inc. v. Indianapolis Jewish Community Relations Council*, 576 N.E.2d 1276, 1276-77 (Ind. App. 1991).  The court's order to show cause warned that if the defendant corporation were unable to defend itself because it was not represented by counsel, plaintiffs would be entitled to default judgment in their favor.  However, the defendant was entitled to a reasonable opportunity to cure the problem.  See *Rueth Development Co. v. Muenich*, 816 N.E.2d 880, 887 (Ind. App. 2004); *Sears v. Blubaugh*, 613 N.E.2d 468, 470-71 (Ind. App. 1993).

CDS did not respond to the order to show cause.  On April 5, 2006, plaintiff moved for default judgment.  The court granted the default judgment on April 28, 2006, two and a half months after Einterz mailed his warning letters and nearly two months after the court issued its order to show cause giving CDS an opportunity to hire a new lawyer.

Plaintiff then started proceedings supplemental to enforce the judgment, and a hearing was set for July 13, 2006.  On July 12, 2006, attorney Gustin J.

-3-

Raikos entered his appearance for CDS and moved to set aside the default judgment.

CDS seeks to set aside a judgment under Rule 60(b) of the Federal Rules of Civil Procedure.  Rule 60(b)(1) allows relief from a default judgment based on mistake, inadvertence, surprise, or excusable neglect.  A defendant ordinarily needs to show good cause for allowing the default to occur, reasonably prompt action to vacate the judgment, and a meritorious defense on the merits.  *E.g.*, *Jones v. Phipps*, 39 F.3d 158, 162 (7th Cir. 1994), and cases cited therein.

The court does not find good cause or excusable neglect or reasonably prompt action to respond to the default.  The Seventh Circuit's comments in *Scandia Down v. Euroquilt* are directly on point here.  In that case, a corporation's lawyer had not been paid and was allowed to withdraw.  The case went to trial with a corporate officer (Dow) speaking for the corporate defendant, without objection from the plaintiff. Speaking through Judge Easterbrook, the Seventh Circuit wrote:

> If Scandia had objected to Dow's representation of Euroquilt, the district court would have been required to prevent Euroquilt from appearing at trial.
>
> The upshot of this would have been the entry of a default judgment for Scandia, unless the district court was required to give Euroquilt more time to obtain counsel.  But Euroquilt had had counsel before, and its decision to put its lawyers' bills at the bottom of the stack caused the problem of which it now complains.  A corporation may not grant itself a continuance by manipulating things so that it has no counsel.

*Scandia Down Corp. v. Euroquilt, Inc.*, 772 F.2d at 1427.

Similarly here, CDS had retained counsel before and had defended the case. When faced with a day of reckoning (*i.e.,* trial), and a warning that the date was firm, it failed to take steps to protect its interests. Robinett's affidavit states that, after he received the court's order of March 2nd with the warning, he contacted an unspecified number of other attorneys and a lawyer referral service. From the time of the attorney's withdrawal, through the court's warning and even after the entry of default judgment, Robinett and CDS did not contact plaintiffs, plaintiffs' attorneys, or the court. This silence adds to the court's conclusion that this is an instance of stalling.

The nature of the case makes time of the essence, and the risks that a debtor-employer will stall are high. The plaintiff plans are liable for benefits for their members and other beneficiaries. If a participating employer fails to pay its contributions, the plans and other employers must pick up the missing tab.

CDS contends that it, at least in its corporate incarnation, did not sign a collective bargaining agreement and did not agree to make contributions to the plaintiffs. However, CDS continued essentially the same business at the same location with the same two employees (Robinett and his brother), and for more than a year CDS submitted contribution reporting forms for at least those two employees and expected benefits for those employees, including Robinett himself.

Plaintiffs certainly made a strong showing that CDS was merely an alter ego for and successor of Concrete Specialists. Perhaps the court should have granted summary judgment for the plaintiff plans, see *Central States, Southeast and Southwest Areas Pension Fund v. Sloan*, 902 F.2d 593, 596-98 (7th Cir. 1990) (affirming grant of summary judgment for delinquent pension contributions based on alter ego theory), but the court took the more cautious approach of denying summary judgment and setting the case for a prompt court trial. Having fought successfully for the right to a trial, defendant was not entitled to a long delay resulting from (a) its choice to use the corporate form of organization and (b) its difficulties with its own lawyer.

The court also noted Mr. Robinett's account of his own illness and other serious illnesses and deaths within his family, as well as other personal crises in 2004 and 2005. Beyond an expression of sympathy, the most pertinent point for purposes of this case is that there is no obvious connection between those difficulties and CDS's failure to respond to the court's March 2, 2006 order warning CDS that it needed to take steps immediately to prepare for the imminent trial that CDS had fought to obtain.

For the foregoing reasons, the court finds that relief under Rule 60(b) is not warranted. Defendant's motion for relief from the judgment (Docket No. 41) and its motion to stay proceedings to enforce the judgment (Docket No. 43) are therefore denied.

So ordered.

Date: December 21, 2006

                                            DAVID F. HAMILTON, JUDGE
                                            United States District Court
                                            Southern District of Indiana

Copies to:

Frederick W. Dennerline, III
FILLENWARTH DENNERLINE GROTH & TOWE
fdennerline@fdgtlaborlaw.com

Gustin J. Raikos
7466 North College Avenue
Indianapolis, IN 46240